# COURT OF APPEALS
## DECISION
## DATED AND FILED

## March 17, 2020

**Sheila T. Reiff**
**Clerk of Court of Appeals**

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No.     2018AP2276**

**STATE OF WISCONSIN**

Cir. Ct. No.  2018CV219

**IN COURT OF APPEALS**
**DISTRICT IV**

DAWN LIVINGSTON-HICKETHIER AND CHRIS HICKETHIER,

   PLAINTIFFS-APPELLANTS,

 V.

JANESVILLE KIA,

   DEFENDANT-RESPONDENT.

APPEAL from an order of the circuit court for Rock County: JEFFREY S. KUGLITSCH, Judge. *Affirmed*.

Before Blanchard, Graham and Nashold, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.     Dawn Livingston-Hickethier and Chris Hickethier appeal a circuit court order dismissing their claims against Janesville KIA relating to the purchase of a used vehicle.[1]  The Hickethiers alleged statutory claims for fraud and unconscionable practices under WIS. STAT. ch. 218 and a common law claim for intentional misrepresentation.[2]  We conclude that these claims were properly dismissed because the Hickethiers failed to sufficiently allege that Janesville KIA made a knowing misrepresentation relating to defects in the vehicle or engaged in unconscionable practices.  We affirm.[3]

## *Background*

¶2     In their complaint, the Hickethiers alleged that Livingston-Hickethier purchased a used 2011 Buick Regal from Janesville KIA.  They further alleged that the used-car buyers guide for the vehicle listed only one defect, a window tint issue.

¶3     The Hickethiers alleged that, shortly after purchasing the vehicle, Livingston-Hickethier noticed it "running rough" and took it in for an oil change.  After two oil changes, the problem persisted, and Livingston-Hickethier took the car to a mechanic for a third oil change.  The mechanic told her that the vehicle had a timing chain that was ready to fail due to an excessive oil consumption issue

---

[1] We refer to Dawn Livingston-Hickethier and Chris Hickethier collectively as the "Hickethiers" because that is how they refer to themselves in their briefing.

[2] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.  For ease of reference, we cite the most recent version of the statutes.  The applicable statutory provisions have not changed during the times relevant here.

[3] The Hickethiers do not challenge the dismissal of an additional claim for fraudulent representations under WIS. STAT. § 100.18.  Therefore, we do not address that claim.

and warned her that it could be dangerous to operate the vehicle. Despite this warning, Livingston-Hickethier needed to drive the vehicle, and it died in traffic. It became "completely inoperable." The Hickethiers alleged that the excessive oil consumption issue resulting in a potential timing chain failure was a defect that existed at the time they purchased the vehicle.

¶4    The Hickethiers further alleged that, after purchasing the vehicle, Livingston-Hickethier obtained a vehicle history report showing that the vehicle was subject to a recall for seat wiring. They alleged that Janesville KIA knew or should have known of the recall.

¶5    Based on their allegations, the Hickethiers claimed that Janesville KIA violated several provisions in WIS. STAT. ch. 218.[4]  More specifically, the Hickethiers alleged that Janesville KIA engaged in various types of fraudulent conduct in violation of WIS. STAT. § 218.0116(1)(c), (dm), and (e), and unconscionable practices in violation of § 218.0116(1)(f).  Additionally, the Hickethiers alleged a common law claim for intentional misrepresentation.

¶6    Janesville KIA filed an answer, and also moved to dismiss for failure to state a claim and for judgment on the pleadings. It argued that the Hickethiers' claims were subject to the heightened pleading standard for fraud under WIS. STAT. § 802.03(2), and that the facts alleged by the Hickethiers were insufficient.[5]

---

[4] "Chapter 218 of the Wisconsin Statutes regulates the automobile business in many respects." *Kolupar v. Wilde Pontiac Cadillac, Inc.*, 2004 WI 112, ¶18, 275 Wis. 2d 1, 683 N.W.2d 58.

[5] WISCONSIN STAT. § 802.03(2) provides:  "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally."

¶7    The circuit court granted Janesville KIA's motion to dismiss.[6]  The court determined that the heightened pleading standard applied to the Hickethiers' claims.  It concluded that the "fatal flaw" in the Hickethiers' complaint was the absence of any allegation that Janesville KIA was aware of any issue with the vehicle.

¶8    We reference additional facts as needed below.

### *Discussion*

¶9    The Hickethiers argue that the circuit court erred in dismissing their claims.  For the reasons that follow, we disagree and conclude that the circuit court properly dismissed the claims.

¶10    As an initial matter, we note that the Hickethiers do not take a clear position on whether the heightened pleading standard under WIS. STAT. § 802.03(2) applies to their claims.  They appear to concede that this heightened standard applies to at least some of the claims.  However, they also assert that the standard should be "relaxed" when, as here, "certain details are beyond the Plaintiffs' knowledge."

---

[6] On appeal, Janesville KIA states that the circuit court granted its motion for judgment on the pleadings.  As far as we can tell from the parties' arguments and the circumstances here, it is inconsequential whether the circuit court granted Janesville KIA's motion to dismiss for failure to state a claim or its motion for judgment on the pleadings.  In either instance, the first step in our analysis is to determine whether the Hickethiers' complaint states a claim.  *See* ***Freedom From Religion Found., Inc. v. Thompson***, 164 Wis. 2d 736, 741, 476 N.W.2d 318 (Ct. App. 1991) (In reviewing a motion for judgment on the pleadings, "[w]e first examine the complaint to determine whether a claim has been stated.").  Here, our analysis ends with that first step.

¶11 We need not decide whether the heightened pleading standard applies to the Hickethiers' claims or, if it does, whether it should be "relaxed" under the circumstances here. We conclude instead that the Hickethiers' claims were properly dismissed even under the ordinary pleading standards.

¶12 "We review de novo a circuit court's decision granting a party's motion to dismiss for failure to state a claim." *Kohlbeck v. Reliance Const. Co.*, 2002 WI App 142, ¶9, 256 Wis. 2d 235, 647 N.W.2d 277.[7] "When determining whether a complaint states a claim upon which relief may be granted, courts must 'accept as true all facts well-pleaded in the complaint and the reasonable inferences therefrom.'" *Cattau v. National Ins. Servs.*, 2019 WI 46, ¶4, 386 Wis. 2d 515, 926 N.W.2d 756 (quoting *Data Key Partners v. Permira Advisers LLC*, 2014 WI 86, ¶19, 356 Wis. 2d 665, 849 N.W.2d 693). "'If the facts reveal an apparent right to recover under any legal theory, they are sufficient as a cause of action.'" *Id.* (quoted source omitted).

¶13 "While courts must accept all well-pleaded facts as true, courts cannot add facts to a complaint." *Id.*, ¶5 (citing *Data Key*, 356 Wis. 2d 665, ¶19). A complaint will be dismissed if, "'[u]nder the guise of notice pleading, the complaint before us requires the court to indulge in too much speculation leaving too much to the imagination of the court.'" *See John Doe 67C v. Archdiocese of Milwaukee*, 2005 WI 123, ¶36, 284 Wis. 2d 307, 700 N.W.2d 180 (quoted source omitted).

---

[7] Whether judgment on the pleadings should be granted is also a question of law that is reviewed de novo. *Freedom from Religion Found.*, 164 Wis. 2d at 741.

¶14    In contending that their complaint states a claim, the Hickethiers make two main arguments.  First, they argue that, contrary to the circuit court's conclusion, their statutory claims do not require that Janesville KIA made a knowing representation relating to defects in the vehicle.  Second, they argue that they sufficiently alleged that Janesville KIA made a knowing misrepresentation.[8]

¶15    In the sections that follow, we reject these arguments, except that we do not decide whether an unconscionable practices claim under WIS. STAT. § 218.0116(1)(f) requires a knowing misrepresentation.  We address that claim in a separate section below and conclude that, regardless of whether there is such a requirement, the Hickethiers' unconscionable practices claim fails for other reasons.

*A.  Whether The Hickethiers' Statutory Claims (Other Than Their Unconscionable Practices Claim) Require That Janesville KIA Made A Knowing Misrepresentation*

¶16    The Hickethiers' statutory claims are based on alleged violations of WIS. STAT. 218.0116(1)(c), (dm), (e), and (f).  The requirements for each of these statutory provisions are as follows:

> (c) Willfully defrauding any retail buyer, lessee or prospective lessee to the buyer's, lessee's or prospective lessee's damage.
>
> ....

---

[8] We perceive no dispute that the Hickethiers' common law intentional misrepresentation claim requires a knowing misrepresentation.  To the extent that the Hickethiers make arguments that we do not address in this opinion, we conclude that those arguments are insufficiently developed to warrant consideration.  *See State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992) (we need not consider inadequately developed arguments).

(dm) Having made a fraudulent sale, consumer lease, prelease agreement, transaction or repossession.

(e) Fraudulent misrepresentation, circumvention or concealment through whatsoever subterfuge or device of any of the material particulars or the nature thereof required hereunder to be stated or furnished to the retail buyer, lessee or prospective lessee.

(f) Having engaged in any unconscionable practice relating to the licensed business activity.

Sec. 218.0116(1).

¶17    Each of the first three provisions requires some form of fraudulent conduct:  "[w]illfully defrauding," a "fraudulent sale," or a "[f]raudulent misrepresentation, circumvention or concealment."  *See* WIS. STAT. § 218.0116(1). Fraud, in turn, requires "a *knowingly* false representation of fact."  ***Korhumel Steel Corp. v. Wandler***, 229 Wis. 2d 395, 403, 600 N.W.2d 592 (Ct. App. 1999) (emphasis added).  The Hickethiers cite no authority that construes the concept of fraud differently for purposes of WIS. STAT. ch. 218.  Accordingly, we reject the Hickethiers' argument that their claims under § 218.0116(1)(c), (dm), and (e) do not require a knowing misrepresentation.

*B.  Whether The Hickethiers Sufficiently Alleged*
*That Janesville KIA Made A Knowing Misrepresentation*

¶18    The Hickethiers next argue that they sufficiently alleged that Janesville KIA made a knowing misrepresentation relating to two claimed defects that were not disclosed:  (1) the excessive oil consumption issue resulting in a potential timing chain failure; and (2) the recall relating to the seat wiring.

¶19    As to excessive oil consumption, the Hickethiers rely on their complaint allegations that the vehicle began "running rough" shortly after it was purchased; that Livingston-Hickethier later learned from a mechanic that the

timing chain was ready to fail due to excessive oil consumption; and that the excessive oil consumption issue existed at the time she purchased the vehicle. The Hickethiers also rely on a provision in the used-car buyers guide stating that the disclosures in the guide were based on what Janesville KIA could "find with reasonable care."[9]

¶20   The Hickethiers argue that "[i]t is reasonable to infer … that Janesville Kia either intentionally did not use 'reasonable care' in discovering" the excessive oil consumption issue, "or that Janesville Kia intentionally refused to disclose information it was aware of in the sale."  In other words, as we understand it, the Hickethiers argue that it is reasonable to infer that Janesville KIA either (1) knowingly misrepresented that it had used reasonable care to attempt to discover defects in the vehicle, or (2) used reasonable care, discovered an excessive oil consumption issue, and knowingly misrepresented that the vehicle was free of excessive oil consumption.

¶21   Janesville KIA contends that these are not reasonable inferences but instead speculation.  We agree.  In particular, we conclude that it is speculative to infer based on the limited allegations here that Janesville KIA necessarily would have discovered an excessive oil consumption issue in the exercise of reasonable

---

[9] The Hickethiers did not attach the buyers guide or vehicle purchase contract to their complaint.  However, Janesville KIA filed a copy of these documents in support of its motion to dismiss and for judgment on the pleadings.  Under *Soderlund v. Zibolski*, 2016 WI App 6, ¶37, 366 Wis. 2d 579, 874 N.W.2d 561, courts "may consider a document attached to a motion to dismiss or for judgment on the pleadings without converting the motion into one for summary judgment, if the document was referred to in the plaintiff's complaint, is central to his or her claim, and its authenticity has not been disputed."  Here, the Hickethiers' complaint refers to provisions in both documents, the documents are central to the Hickethiers' claims, and there is no dispute as to the documents' authenticity.  Accordingly, we consider these documents in addressing whether the Hickethiers stated a claim.

care. We note that one of the Hickethiers' allegations *undercuts* this inference, namely, the allegation that the excessive oil consumption issue was not identified by a mechanic until the Hickethiers took the vehicle for its third oil change. Additionally, although the Hickethiers alleged that the vehicle was "running rough" "shortly after" they purchased it, their allegations do not connect "running rough" to excessive oil consumption. In sum, because it is speculative to infer that Janesville KIA would have necessarily discovered an excessive oil consumption issue in the exercise of reasonable care, it is also speculative to infer that Janesville KIA made a knowing misrepresentation relating to excessive oil consumption.

¶22     As to the recall for seat wiring, the Hickethiers' argument is much the same. They argue, as we understand it, that it is reasonable to infer that Janesville KIA either (1) knowingly misrepresented that it had used reasonable care to attempt to discover recalls on the vehicle, or (2) used reasonable care, discovered the recall, and knowingly failed to disclose the recall. Further, as noted above, the Hickethiers expressly alleged that Janesville KIA "knew or should have known" of the recall.

¶23     Janesville KIA counters that, under WIS. ADMIN. CODE § Trans 139.04(9) (Sept. 2008), it has no duty to discover or disclose recalls on vehicle makes for which it does not hold a franchise.[10] Janesville KIA points out that the Hickethiers make no allegation that it holds a franchise for Buick, the vehicle make that Livingston-Hickethier purchased.

---

[10] WISCONSIN ADMIN. CODE § Trans 139.04(9) (Sept. 2008) places several obligations relating to recalls on a dealer that delivers to a retail purchaser "any used vehicle of a line make for which the dealer holds a franchise."

¶24    The Hickethiers do not refute Janesville KIA's argument that it had no legal obligation to discover or disclose the recall. Accordingly, we take the argument as conceded and conclude that their complaint fails to allege any actionable knowing misrepresentation relating to the recall. *See United Coop. v. Frontier FS Coop.*, 2007 WI App 197, ¶39, 304 Wis. 2d 750, 738 N.W.2d 578 (taking as a concession the appellant's failure to respond in a reply brief to an argument in the respondent's brief).

¶25    In concluding that the Hickethiers have not sufficiently alleged that Janesville KIA made a knowing misrepresentation, we do not mean to suggest that there is a high bar to allege knowledge. We conclude only that the Hickethiers' allegations do not meet the relatively low bar required. In short, the Hickethiers' complaint requires the court to "'indulge in too much speculation'" as to Janesville KIA's knowledge. *See John Doe 67C*, 284 Wis. 2d 307, ¶36 (quoted source omitted).

### C. Unconscionable Practices Claim

¶26    We turn to the Hickethiers' unconscionable practices claim under WIS. STAT. § 218.0116(1)(f). As noted, this statutory provision prohibits "any unconscionable practice relating to" the sale of the vehicle the Hickethiers purchased from Janesville KIA. *See* § 218.0116(1)(f).

¶27    The Hickethiers argue that their unconscionable practices claim may proceed because their complaint allegations show that Janesville KIA "ignored a regulatory duty and sold [Livingston-Hickethier] an unsafe vehicle that soon stopped working." More specifically, the Hickethiers argue as follows:

> The complaint alleges that despite knowing [that Livingston-Hickethier] had recently filed bankruptcy, and that because of that she wanted to purchase a reliable

> vehicle, Janesville Kia increased the price of her vehicle by $300, and sold her a car that was unsafe to drive and which shortly after purchase became completely inoperable and would require extensive repairs. A jury could find that Janesville Kia's claim that the electrical problem was simply a fuse (rather than a recall issue) and its selling a 'dangerous' vehicle to [her] at an inflated price was unconscionable.

We reject the Hickethiers' argument as to their unconscionable practices claim because we conclude that their argument does not accurately characterize the allegations as stated in their complaint or the terms of the purchase contract.

¶28 First, the Hickethiers' complaint allegations are not reasonably construed as pleading that the vehicle was unsafe to drive or otherwise dangerous or inoperable when Janesville KIA sold the vehicle to Livingston-Hickethier. The Hickethiers alleged that a safety issue was identified when Livingston-Hickethier took the vehicle for its third oil change and that the vehicle became "completely inoperable" when Livingston-Hickethier drove the vehicle after her mechanic warned her of the issue. The allegations leave to speculation when the vehicle became unsafe to drive.

¶29 Second, the Hickethiers' allegations do not show that Janesville KIA inflated the price of the vehicle by $300. The Hickethiers alleged that Janesville KIA "set the original purchase price at $12,500, rather than the agreed-upon $12,400," and that Janesville KIA included a $199.99 service fee that Livingston-Hickethier had not agreed to pay. However, the purchase contract that Livingston-Hickethier signed shows that the final purchase price, including the $199.99 service fee, was $12,224.95. To the extent the Hickethiers' allegations are inconsistent with the purchase contract, the purchase contract controls. *See Peterson v. Volkswagen of Am., Inc.*, 2005 WI 61, ¶15, 281 Wis. 2d 39, 697

N.W.2d 61 (A document incorporated into the pleadings "prevails over inconsistent averments in the complaint.").

¶30    In sum, for the reasons stated above, we affirm the circuit court's order dismissing the Hickethiers' claims against Janesville KIA.[11]

*By the Court.*—Order affirmed.

This opinion will not be published.    *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[11] In the conclusion section of its brief, Janesville KIA requests that we award attorney fees and costs for a frivolous appeal.  We decline to address this request because Janesville KIA did not file a separate motion raising frivolousness.

> In order for parties before the court of appeals to have the proper notice and opportunity to be heard, parties wishing to raise frivolousness must do so by making a separate motion to the court …. [A] statement in a brief that asks that an appeal be held frivolous is insufficient notice to raise this issue.

*Howell v. Denomie*, 2005 WI 81, ¶19, 282 Wis. 2d 130, 698 N.W.2d 621.